## Internes' Hospital Service

BARCO, Deputy Attorney General, July 8, 1941.—You have requested us to advise you concerning a series of questions relating to medical internes. In this opinion we shall confine ourselves solely to the consideration of one question, and all other questions contained in your request will be the subject of a separate and later opinion.

The question which shall be the basis of this opinion is: May an interne continue to serve in the same capacity in the hospital where he serves his interneship during that period which runs from the time that he takes his examination for licensure until he receives notice of the results of his examination.

The provisions of the law applicable to the problem are in sections 5 and 7 of the Medical Practice Act of June 3, 1911, P. L. 639, as last amended by the Act of July 19, 1935, P. L. 1329, 63 PS §§405, 409. Section 5 reads:

"Applicants for licensure under the provisions of this act shall furnish, prior to any examination by the said board, satisfactory proof that he or she . . . *shall have completed not less than one year as intern in an approved hospital.* . . ." (Italics supplied.)

The 1935 amendment to this particular section added the following new paragraph:

"This act shall also be construed as applying to hospitals employing, on salary, graduate interns whose services are confined to the said institutions, when they assume individual responsibility in the care of patients."

Section 7, supra, provides:

"All persons who have complied with the requirements of the rules and regulations of the board, and who shall have passed a final examination, and who have otherwise complied with the provisions of this act, shall receive from the Department of Public Instruction, acting for the said board, a licensing certificate entitling them to the right to practice medicine and surgery, . . . Provided, That this section, relating to certificates to practice medicine and surgery, shall not apply to . . . any one while actually serving as a student intern under the supervision of the medical or surgical staff of any legally incorporated hospital or State hospital: . . ."

In the order in which these provisions have been stated they provide:

(*a*) That before a graduate of an approved medical college can be examined for licensure he shall have completed not less than one year as an interne in an approved hospital, meaning a hospital approved by the board for the training of internes. This is a minimum, not a maximum requirement. An interne may serve more than one year in a hospital; there is no prohibition against such service in a hospital.

(*b*) That the Medical Practice Act applies to hospitals employing, on salary, "graduate interns" where they assume responsibility over the care of patients. This means that such internes, not being exempted from licensure, are subject to the requirements of the act. This construction conforms to that made by the Department of Welfare in its letter of May 16, 1936, in which it is said that hospitals employing graduate internes, on salary, whose services are confined to such institutions, and who assume individual responsibility in the care of patients, shall be licensed to practice medicine in Pennsylvania. The governing provision here is the assumption of responsibility over the care of patients. The term "graduate intern" and the employment on salary are immaterial.

No person assuming responsibility is exempted from licensure.

(c) That "student interns" serving in any incorporated hospital or State hospital are exempt from the provisions of the Medical Practice Act requiring licensure so long as they act under the supervision of the medical or surgical staff of the hospital. This provision is not restricted to internes serving in hospitals approved for interne training, but applies to all internes in legally incorporated or State hospitals.

We have been informed that the State Board of Medical Education and Licensure refers to the year of service by an interne in an approved hospital as the "fifth year of medicine". Apparently this phrase has been coined as it is not contained in the Medical Practice Act. According to the board, a medical graduate who has completed his fifth year of medicine is a "graduate intern". The board evidently has construed the term "student intern" as meaning a medical graduate who is serving his required one year as an interne in an approved hospital, that is, his fifth year of medicine.

Section 5 of the Medical Practice Act, as amended, supra, which prescribes one year as an interne in an approved hospital, only prescribes the minimum. Section 7 of the same act, as amended, which exempts "student interns" from licensure while acting under proper supervision, exempts from licensure "student interns" serving in any incorporated or State hospital so long as the interne acts under the supervision of the medical or surgical staff of the hospital.

It is not apparent to us from a careful study of sections 5 and 7 of the Medical Practice Act how the State Board of Medical Education and Licensure can legally declare that a student interne must remain inactive as to any hospital service which he can render in his capacity as student interne from the time he takes his examination for licensure until he receives his license as a medical practitioner.

A "student intern" is one who is engaged in medical studies in a hospital; he is continuing his studies in the field of the practice of medicine under supervision, not of the college professor, but of the practitioner. This is the period of study during which he learns how to apply that which he has learned in a medical school.

We are unable to understand by what incantation of the board it is possible for it to say that because a student interne has taken the examination for licensure he suddenly disqualifies himself from further rendering the same service in which he has been engaged during his fifth year of medical study. We can conceive of no reason or any legal cause which suddenly makes a student interne, after he has taken his examination for licensure, a medical outcast during the waiting period. The fact is that under the Medical Practice Act a medical graduate may serve as a student interne so long as he acts under the required supervision. In so acting he violates no part of the Medical Practice Act as he is not practicing medicine or surgery without a license contrary to the act.

In the construing of a law, the courts, in order to ascertain and effectuate the legislative intent, are required to consider, inter alia, the mischief sought to be remedied and the object sought to be obtained. See Statutory Construction Act of May 28, 1937, P. L. 1019, sec. 51, 46 PS §551.

What was the mischief to be remedied and the object to be obtained by the amendments to sections 5 and 7, supra, of the Pennsylvania Medical Practice Act? Obviously the answer is the prevention of the practice of medicine and surgery by internes in hospitals, prior to licensure, unless that practice is done under the supervision of the medical or surgical staff of the hospitals; and to accomplish this section 7 was amended so as to permit a student interne to practice, but only under such supervision. Section 5 was also amended so as to require licensure if the interne assumed responsibility over the care of patients.

Prior to 1921 there was in section 5 of the Pennsylvania Medical Practice Act the following clause:

". . . Nothing in this act, however, shall be construed as applying to hospitals employing, on salary, graduate interns whose service is confined exclusively to said institution. . . ."

This clause permitted internes in hospitals to practice medicine and surgery without being licensed and to assume responsibility. This provision was eliminated by an amendment on April 20, 1921, P. L. 158, and exemption from licensure thereafter depended upon the provision in section 7, as follows:

". . . Provided, That this section, relating to certificates to practice medicine and surgery, shall not apply to . . . any one while actually serving as a member of the resident medical or surgical staff of any legally incorporated or State hospital: . . . ."

This latter provision was the one which from 1921 to 1935 exempted internes from licensure, since they could assume responsibility without licensure. There was no prohibition against it. They were, during this period, members of the resident medical and surgical staff of a hospital. However, this whole situation was changed in 1935 when the exemption was limited to "student interns" who serve under supervision.

There can be no clearer application of the legal rule of "where reason fails, the law fails" than when applied to the ruling of the State Board of Medical Education and Licensure which suddenly disqualifies a student interne from any further service in such a capacity merely because he has taken his examination for licensure. A careful study of the provisions of the Pennsylvania Medical Practice Act leads us to the inevitable conclusion that there is no real reason nor any legal justification for such an order on the part of the board. Certainly the continuance of the board's rule cannot but result in seriously handicapping the hospital service in this State which, in view of the existing National emergency, may become

more acute with the passing of time if the hospitals are unable to secure their quota of student internes and resident physicians.

In view of the foregoing, it is our opinion, and you are accordingly advised, that a student interne may continue to serve as such from the time he takes his examination for licensure until such time as he is notified of the results of his examination.